No. 10.—WILLIS L. LEONARD, plaintiff in error *vs.* DAVID SCAR-
BOROUGH AND WIFE, *et al.* defendants in error.

[1.] The act of 1821, declaring that suits in favour of a guardian shall not abate upon
the revocation of his letters of guardianship, but that the removal being suggested
of record, a *scire facias* may issue to make the successor a party at any time after
his qualification and appointment, does not take from Chancery the right of appoint-
ing a guardian *ad litem,* to prosecute a suit already commenced in behalf of an in-
fant, provided no appointment has been made by the Ordinary.

[2.] A Sheriff may sell under execution the undivided interest of the defendant in ne-
groes and other personal property, and the purchaser at such sale becomes a tenant
in common with the other co-tenants; and until there is a severance, or destruction
of the tenancy in common, one or more of the co-tenants cannot maintain trover or
trespass against the others.

In Equity.   From Dooly Superior Court.   Tried before Judge
WARREN, November Term, 1846.

For the errors assigned, and the facts of the case, see the de-
cision of the Supreme Court.

BROWN for the plaintiff in error.

CRAWFORD for the defendants in error.

Mr. BROWN argued—

1st. The Court should have required the issuing of *scire facias,*
as the statute directs, before appointing a guardian. *Prince D.*
246.

2d. The Court below should have dismissed the bill for want of
equity, as there was no fraud in the bill such as a Court of equity
would recognise. It is no fraud to purchase an adverse title, even
with notice, unless the party purchases the very title which in
equity belongs to the adverse party. 2 *Story's Com. on Eq.*
7, 9. There must be fraud and illegality in the instrument
sought to be cancelled by a Court of Equity, not a mere deficiency
in the claim of title.

3d. The Court should have dismissed the bill because there was
no proof of a conversion of the negro sued for; the only evidence
was a purchase by defendant, and a subsequent continued posses-
sion of the negro. Before trover can be sustained, and this is a suit
to accomplish the same object, a conversion by the defendant must

be proven. Either that defendant was a trespasser in the acquisition of the property, or that he had, after getting the possession peaceably and legally of another's property, actually converted the property, or had refused to deliver the same on demand. *Arch. Nisi Prius.* See Trover, &c.

4th. The Court erred in not leaving it to the jury to say whether, according to the facts in proof, there had been a conversion; and as it was in proof that the property had been sold for David Scarborough's debts at the Sheriff's sale, and it was further in proof that Scarborough was a tenant in common with the other donee in right of his wife, the Court should have charged the jury, that if the said Sheriff's sale was legal and fair, that the purchaser at the sale thereby became a tenant in common with the other claimants; and in that event there could have been no conversion in the co-tenant, except by sale or destruction of the property. *Tidd's Pr.* 921; *2 John. Ch. R.* 549; *Allen on Sheriffs,* 154, 7; *2 Selw. N. P.* 1054, 5. And the jury should have been further instructed that if they believed there had been a conversion by defendant as a co-tenant in common, yet that they should only find for the complainants the amount of their share of the property, allowing to defendant the value of his share therein.

*By the Court* — LUMPKIN, J. delivering the opinion.

On the 14th day of September, 1832, one Miles Bembry executed a conveyance to his four grand children, Penelope L., John, Kenneth, and Sarah Ann Bembry, children of his son, John Bembry, of certain negro slaves, to wit: Dinah, Dick, Alice, and Saline, retaining a life estate in the property, and providing that the same should be kept together until Kenneth, the younger, should become of age, and then to be divided between the four. This conveyance was immediately thereafter duly recorded, and the property placed in the possession of John Bembry senr. the father of the donees, who kept the same until his death, except Dinah and her children. Miles Bembry died in 1838, John, his son, having departed this life previously. Upon the intermarriage of Penelope with David Scarborough, Dinah and her children were permitted to go into their possession, upon what understanding or terms does not satisfactorily appear. In 1841 Dinah and her children, Berry, Jacob, Eleanor, and Oran, were levied upon by the Sheriff, under certain executions against David Scarborough, and sold. Oran,

one of Dinah's children, after passing through several hands, was bought by Willis L. Leonard, the defendant below and plaintiff in error. On the day of sale notice was given of the title to these negroes, the deed being exhibited by David Scarborough, and the by-standers informed that he owned only the one undivided fourth thereof, in right of his wife.

David Scarborough, in behalf of himself and the other three children, as their guardian, filed his bill in Dooly Superior Court, setting forth the foregoing facts, and praying that Leonard might be decreed to surrender up said slave, and account for his hire. During the progress of the cause, to wit, in November, 1845, it being made appear to the Court that David Scarborough had been dismissed from his guardianship, Pitt F. D. Scarborough was, upon giving bond and security, appointed guardian *ad litem*, to prosecute said suit in behalf of the minors.

The cause came on for final hearing at November Term, 1846, when counsel for Leonard moved to set aside the order appointing Pitt F. D. Scarborough guardian *ad litem*, upon the grounds :

1st. That the Court had no power to make such appointment.

2d. Admitting the Court possessed the power, it was not exercised in a regular manner.

3d. In case of removal of a guardian who is a party to a suit, his successor must be substituted by *scire facias*, and in no other way.

All of which objections being overruled by the Court, defendants's counsel excepted.

A motion was then made to dismiss the bill :

1st. For want of proper parties.

2d. For want of equity.

The motion was refused and the cause submitted to the jury. Upon tendering in evidence the instrument under which the complainants claim title, the defendant demurred to the reading thereof, for the reason that it was a testamentary paper and had not been admitted to record as such by the proper court. The demurrer was overruled, and the paper ordered to be read; whereupon the defendant, by his counsel, excepted.

Several witnesses were then examined on the part of the complainants, and the defendant introducing no testimony, the Judge charged the jury "that if they believed that the possession of property passed from Miles Bembry to the complainants, upon the

delivery of the instrument to them, they ought to find for the complainants the amount of the property sued for."

The jury returned a verdict for four hundred dollars and costs of suit, to be discharged by the delivery of the boy in ten days, also twenty-five dollars a year for hire from the time the suit was commenced, and the title of the slave to be vested in the defendant upon the payment of the damages, or to be cancelled upon his delivery to the complainants.

Several of the points made by the pleadings and raised on the trial below have been abandoned here. We shall therefore express no opinion respecting them. One was, as to the want of proper parties to the bill; another and a still graver, perhaps, was as to the character of the instrument under which the complainants derive title. The only open questions to be disposed of by us are, as to the appointment of the guardian *ad litem*, to represent the infant complainants; and the instructions of the Court in submitting the cause to the jury.

It is true that usually it is not the province of the Court to appoint a guardian, or next friend, *to sue for*, but only *to defend* an infant party. *Priest* vs. *Hamilton*, 2 *Tyler R.* 49. But here suit had been instituted by the proper guardian, who was displaced by the Ordinary, and the Judge of the Superior Court, sitting as Chancellor, and in the exercise of the jurisdiction confided over minors, to Chancery, directed the action to be carried on in the name of a *prochein amy*.

[1.] The Act of 1821, *(Prince Dig.* 245,) declares that suit shall not abate by the revocation of letters of guardianship, but that the successors shall be appointed by *scire facias*. Suppose however, as was the case here, that none had been appointed and quallified by the Ordinary, has the power of Chancery to interpose been taken away? If so, this statute, in this particular at least, would have been passed for the *injury*, instead of the *benefit* of orphans, as its preamble states.

[2.] The charge of the Court was not sufficiently guarded. It might be true that the possession of the property accompanied the conveyance, and yet the jury be wholly unjustifiable in finding against the purchaser at Sheriff's sale. The fatal error in the charge however consisted, in permitting the complainants to recover the *entire property*, with the hire, thereby treating the Sheriff's sale as a nullity. And here the question is distinctly presented *what may be sold under an execution?* Under the Act of 1811,

Prince 463, it is hard to say what *may not.* That Act declares that executions may be levied upon *"the estate of the defendant both real and personal."* Independent of this sweeping statute, how stands the matter at Common Law?

Even as to *partners,* which is a much stronger case than that of *tenants in common,* the rule in England formerly was, that the Sheriff, under an execution against one of two co-partners, took the partnership effects and sold the moiety of the debtor. *Jacky* vs. *Butler,* 2 *Ld. Raymond R.* 871; 1 *Salk. R.* 292; or, to use the language of Lord Eldon in *Dutton* vs. *Morrison,* 17 *Ves. R.* 194, 206, "the creditor finding a chattel belonging to the two, laid hold of the entirety of it, considering it as belonging to the two; and paying himself by the application of one half, he took no further trouble." The same rule formerly obtained in this country, and it does still in the State of Vermont, at least. *Reed* vs. *Shepardson,* 2 *Verm. R.* 120. The doctrine however now is, that the Sheriff may seize under an execution, the *interest* of the defendant, and the purchaser at the sale becomes tenant in common with the other partner. 1 *East. R.* 367; *Fox* vs. *Hanbury, Cowp. R.* 445; *Allen* vs. *Wells,* 22 *Pick. R.* 450. And the interest which he buys, is what falls to his share upon a division of the surplus, after discharging all the demands upon the co-partnership. *Collyer on Part.* B. 3, *ch.* 6, *s.* 10, 550 *to* 562, 2*d ed.; Taylor* vs. *Field,* 4 *Ves. R.* 396.

How the sale of an interest so contingent as this, subject to the liens of all the co-partnership creditors, as well as the share or portion of the other partner, and which after the accounts are taken may in reality dwindle to nothing, can be reconciled with the law which prohibits the sale of a distributive share of an estate, until after a division takes place, I cannot very clearly see. But this is the business of the Legislature and not of the Courts.

This principle then being ceded, and there is none, I apprehend, better established than that partnership property may be taken in execution under a separate judgment against one partner, it would seem to be quite useless to examine whether the same rule applies to tenants in common. The conveniences and mischiefs attending the former species of sale, and which are so vividly depicted by Judge Story in his Commentaries on the law of partnerships, sec. 312, have no application whatever to those of the latter kind.

In *Melville* vs. *Brown,* 15 *Mass. R.* 82, there were two tenants in common of a chattel, and the Sheriff upon execution against

one of them seized the chattel and sold the *whole* of it, and paid over the *whole* money to the judgment creditor. The other part-owner of the chattel brought trespass against the Sheriff, and it was resolved by the Court that although the Sheriff might seize the *whole*, yet, that he ought not to have sold *but the share of the judgment debtor*, and that the subsequent abuse of his authority made him a trespasser *ab initio*.

In *Mersereau* vs. *Norton*, 15 *John. R.* 180, it was held by the Supreme Court of New York, that an attachment issued in pursuance of the act against absconding and absent debtors, the Sheriff may take and sell property of which the absconding debtor is a tenant in common with another, though it be in possession of his co-tenant. But the Sheriff can sell only the undivided moiety or interest of the debtor, and the purchaser at such sale becomes a tenant in common with the other co-tenant, who cannot therefore maintain trespass or trover against him, the tenancy in common not being severed or destroyed by the sale.

The Court say, " the only question which appears to be raised in the Sheriff's return is, whether a Sheriff, under an attachment like this, has a right to take and sell property of which the absconding debtor was only a tenant in common, when that property was found in the possession of the other co-tenant? *Of this there can be no doubt.* There is no other way to get at the interest of the one against whom the attachment issues. The Sheriff in such case seizes *all*, and sells a moiety thereof undivided, and the vendee becomes tenant in common with the other partner. Although the Sheriff sold the oxen as the sole property of Norton, yet no more than his interest passed, and the co-owner became tenant in common with the purchaser. The Sheriff who took the oxen and all who aided him and the purchaser, must certainly have all the rights and interests of Norton, the absconding debtor; and one tenant in common cannot maintain trover or trespass against his co-tenant." *Littleton, sec.* 323; 2 *John. R.* 468. " The sale by the Sheriff was not such a destruction of the property as to work a severance of the tenancy in common." *Wilson & Gibbs* vs. *Reed,* 3 *John. R.* 176; *Sheldon* vs. *Skinner,* 4 *Wend. R.* 525; *Dunham* vs. *Murdock,* 2 *Ib.* 553.

I take, then, as settled, that no reported case can be found which denies the right of the Sheriff to seize and sell the share of the judgment debtor, whatever that may be. What, then, would be *equity* in the present case? A course something like this would

appear to mete out justice to all concerned——estimate the value of the whole property conveyed by Miles Bembry to his grand-children, and if it shall be ascertained that David Scarborough, in right of his wife, has not received more than his share, there should be a general finding for the defendant; if, however, Dinah and her children, that were sold, exceeded a share, then the owners of the slaves bought at the Sheriff's sale should refund three-fourths of the excess, and each in proportion to the value of the property, which he holds.    Upon a bill filed for a division among the origi-nal parties, this is virtually what David Scarborough would have been decreed to do, and the purchasers under him stand in his shoes.

The judgment, therefore, below, must be *reversed*.